## Case No. 2,976.

### COLE v. The ATLANTIC.

[Crabbe, 440.][2]

District Court, E. D. Pennsylvania. Sept. 10, 1841.

MARITIME LIEN FOR WORK AND MATERIALS—
LACHES—LIMITATIONS.

1. The law will not suffer a mechanic's claim on a vessel, for work and materials furnished, to be defeated on slight grounds, but will be astute to prevent it.

[Quoted in Reeder v. The George's Creek, Case No. 11,654. Cited in The Tonawanda, 27 Fed. 576.]

2. A lien for work and materials is not barred by the lapse of two years, unaccompanied by culpable or unreasonable neglect, but will bind the vessel after that time, even in the hands of a bona fide purchaser.

[Cited in The D. M. French, Case No. 3,938; The E. A. Barnard, 2 Fed. 722; The Bristol, 11 Fed. 163.]

In admiralty. This was a libel [by John Cole, a sailmaker] for work and materials furnished nearly two years before the commencement of suit. The only defence was the lapse of time, and an alleged unwarrantable neglect.

O. Hopkinson, for libellant, cited The Rebecca [Case No. 11,619]; The Mary [Id. 9,186]; The Nestor [Id. 10,126]; The Jerusalem [Id. 7,294]; North v. The Eagle [Id. 10,309].

Gerhard, for respondent, cited, in addition, Blaine v. The Charles Carter, 4 Cranch [8 U. S.] 328.

HOPKINSON, District Judge. The libel sets forth that the brig Atlantic, owned by Samuel Mowrey, of Lubec, in the state of Maine, about the 19th October, 1839, came to the port of New York, in need of repairs and supplies to render her competent to prosecute her voyages; that the libellant contracted to furnish the necessary repairs and supplies, and did furnish them according to his contract, to the amount of three hundred and twenty-six dollars and seventy cents, as ap-

pears by a schedule annexed to the libel; and that this sum is now due and unpaid. The supplies in question were furnished to the master of the brig. The answer is put in by one Jeremiah Fowler, of Maine, who avers that he is the true and lawful owner of the brig, and has been so since the 26th of June, 1841, and that he became owner without any knowledge or notice of the claim of the libellant; that, since the said claim has arisen, the brig has made many voyages between the said port of Lubec and New York, and between Lubec and Philadelphia; that she is regularly enrolled at Lubec, and that he is ignorant of the facts and allegations contained in the libel, and prays that the libellant may be obliged to make due proof of them. The libellant proved his account as it was annexed to his libel, and no dispute has been made of its correctness. A commission was taken by the respondent, to Lubec, and the first witness examined was Jabez Mowrey, the former owner of the brig, who is erroneously called "Samuel" in the libel. The competency of this witness was objected to by the counsel of the libellant, but his testimony was read, reserving the objection. He testifies that he believes Jeremiah Fowler is the sole owner of the brig; that he gave the said Fowler a bill of sale for her, dated the 1st of April, 1841, a copy of which is annexed to his deposition. He says he knew nothing of this claim, and never ordered the master, or requested the libellant, to furnish the brig with the sails and other articles mentioned; and he is confident that Fowler had no knowledge of the claim. He says the brig has been at New York two or three times since October, 1839; that she has been to Boston, and Wilmington, North Carolina, and took a load of coal from Philadelphia to Boston. I give the evidence of this witness without prejudice to the exception, if it should hereafter avail the libellant. The next witness was Samuel Root. He testifies that he knows the respondent to be the owner of the brig, and that he became so on the 1st of April, 1841, by a bill of sale from Jabez Mowrey. He says that the brig has made a number of voyages since October, 1839, and has been once at New York and Philadelphia since that time, but as to other places he cannot say. The bill of sale has a clause in it from which the counsel for the libellant has inferred that the respondent had some knowledge of this claim, or, at least, a suspicion that there were unsatisfied claims against the brig, and from which he has endeavored to guard himself. This clause contains a covenant and warranty against all lawful claims and demands of all persons whomsoever. Such are the facts of the case, and we are to say what is the law, on the question between these parties.

This is a case of supplies furnished to a foreign vessel, and it has not been questioned that the law gave the libellant a lien for them on the brig, which may be enforced in

---

[1] [From 7 Wkly. Notes Cas. 115.]
[2] [Reported by William H. Crabbe, Esq.]

this court (The Nestor [Case No. 10,126]; Davis v. The New Brig [Id. 3,643]; The General Smith, 4 Wheat. [17 U. S.] 438); but it is contended that the libellant has lost or waived his right by the lapse of time and neglect. This is the question we have to inquire into. The lien now sought to be enforced is given to the mechanic who furnishes work or materials to a vessel, in a foreign port, which are necessary for the prosecution of her voyage. The policy of the law, as well as the principles of justice, regards this claim with high favor; and it does so not more for the security of the mechanic, than for the general interests of commerce and the particular interests of every ship-owner. A vessel bound on a distant voyage, with a valuable cargo, meets with a disaster which prevents her proceeding with safety, although in itself it may not be of much account, and may be repaired at a small expense. She puts into a port where her owner has neither funds nor credit, and, unless the repairs can be made, the voyage will be broken up, and both vessel and cargo exposed to a ruinous diminution of value. In this situation, the law says to the mechanic, "Relieve this vessel from her distress, save her owner from this loss, and the vessel herself, wheresoever she may go, shall be security for your payment." There is some generosity in the confidence thus given to strangers, because it is not without considerable hazard. The vessel may be lost; she may not come within the reach of the mechanic; her owners may be distant or insolvent; the mechanic, nevertheless, permits her to go, and the law will not suffer such a claim to be defeated on slight grounds, but will be astute to prevent it.

The respondent in this case puts his defence on two grounds. First, the time that has elapsed between the furnishing of the supplies, and the legal proceeding for recovering the amount due thereon, and that, in the mean time, the brig has passed into the hands of a bona fide purchaser. It is very clear that neither of these circumstances, nor both of them combined, will discharge the lien imposed by law on this vessel—unless, indeed, the time had been much longer than in the present case. There is no authority or principle which bars a claim of this sort in the admiralty, or indeed in any other court, by the lapse of two years; and if the lien remains, it holds to the vessel notwithstanding a sale. The purchaser takes it at his hazard, or on the faith of the vendor; the right of the mechanic cannot be divested by a sale, or he would in every case be in the power of the owner. He must, of necessity, permit the vessel to go out of his hands without payment; and, if a sale can deprive him of his right, he can never be safe. Whether the sale is made one month or two years after the work done can be of no importance, provided the time be not, of itself, such as to divest the right. The second point of defence is a culpable or

unreasonable neglect, on the part of the libellant, to prosecute his claim. If this be sustained by the evidence, it will avail the respondent. It is obviously absurd to charge neglect, unless there has been an opportunity for vigilance. If the party has not had it in his power, by the exercise of ordinary diligence, to prosecute his claim against this brig, it is clear he cannot be charged with such negligence as will forfeit his right. What evidence have we of opportunities neglected by the libellant to enforce his claim? If the evidence of the late owner is received, he says the vessel has been at New York two or three times since October, 1839; but how long she was there is not stated, nor is it pretended that the libellant had any knowledge of her being there. It would surely be unreasonable to say that he was bound to know the arrival and departure of all the coasting vessels that came to New York in the course of the year, amounting, I presume, to many thousands. It would be straining probabilities to the utmost to say that we must presume the libellant knew this vessel to be at New York, perhaps for a few hours only, or to say that he was bound to know it, or to be liable to be charged with such negligence as would forfeit his claim. On the evidence of Samuel Root, the brig was but once at New York in the period mentioned, and how long she was there is not stated. As to the voyage of the vessel to Boston, to North Carolina, and Philadelphia, it cannot be pretended that he was bound to know them. When, fortunately, he was informed of her being at this port, he was prompt to have her arrested for his claim.

The cases cited by the counsel for the libellant fully support these general views of the law of this case. In The Rebecca [Case No. 11,619], the learned judge gave a careful examination and elaborate opinion to this, among other questions that were presented to him. The libellant there shipped, at New York, certain goods on board of the Rebecca, to be delivered at Portland. The vessel arrived there, and the consignees offered to pay the freight, and demanded the delivery of the goods. The captain refused to deliver them, they having been lost in consequence of bad stowage. The libellant prayed for process against the vessel, and that she might be sold to pay his damage. It was decided that the merchant who ships goods has a lien on the vessel for loss or damage to them by the fault of the master; that this lien might be enforced in the admiralty; and that this claim is to be preferred to those of general creditors. The part of the case which is particularly applicable to ours, is on page 211. It was contended by the respondent that the shipper had lost his lien by neglecting to enforce it in time. The judge agrees that liens of this description should be enforced without undue delay. What is undue delay must de-

pend on the circumstances of each case. In the case of The Rebecca, the owner of the goods ordered process against the vessel as soon as he heard of the loss; but before it was served she had left Portland for her home port, and did not return for nine months, when she was arrested. In the intervening period she was engaged in transporting stone between the Hudson river and the Delaware, passing the city of New York at every trip, and stopped there for a few days. New York was the place of residence of the libellant; but it was not proved that he knew these facts. Under such circumstances, the judge thought the delay of nine months was no bar to the suit. We should here remark that there was some negligence on the part of the consignees, the agents of the shipper, in not arresting the vessel immediately on receiving information that the goods were lost or damaged, and, more especially, in suffering her to leave Portland without any proceeding against her; whereas, in our case, the libellant, as will be seen, could not in the true spirit of his contract prevent the brig he had repaired from proceeding on her voyage, until he was paid. Again, it was much more likely, and would be much more reasonable to presume, or require, that a shipping merchant at New York, should know of the arrival and departure of vessels at and from that port than a mechanic, whose daily occupation does not put him in the way of such information. Another part of the case of The Rebecca has an application to that we are considering. It was there contended that the lien was defeated by the sale and transfer of the vessel to a bona fide purchaser, although she might still be liable in the hands of the original owner. This was overruled by the court, and the reasons, which to me are satisfactory, are given at length. The lien or right of the libellant was antecedent to that of the purchaser. Could he be deprived of it without any fault or negligence on his part? He must have a reasonable time to avail himself of his security, and an opportunity to do so, or he might be defeated by an immediate sale of the vessel. The judge does not mean to deny that if a privileged creditor remains silent, after having had a proper opportunity to enforce his right, and the vessel be sold to a bona fide purchaser, without notice, the lien will be forfeited or held to be waived; but he thought there was sufficient diligence in that case. I have already observed that there was one opportunity there, of which the agents of the libellant might have availed themselves to arrest the ship, but that none such was afforded to the present libellant. The case of The Mary [Case No. 9,186] was a claim upon the vessel for mariners' wages. The seamen had shipped in June, 1818, on a voyage from New York to New Orleans, at which last port the ship remained until August, 1819, when the seamen were discharged, and the captain left the ship. In October following, the claimants purchased the ship, and sent her to Liverpool, and thence to New York, where she arrived in July, 1820. The master had dissuaded the men from libelling the vessel in New Orleans, telling them that if they would come to New York he would see them paid. The defence was, that the seamen did not arrest the vessel at New Orleans, but elected to return to New York and look to the owners or master, and could not now proceed against the ship in the hands of a bona fide purchaser. This was certainly a stronger case of neglect or waiver than we have to decide. The reply to the defence was, that the statute of limitations did not apply to the subject, and that there was no evidence of that gross neglect which would forfeit the remedy. It was an appeal from the district court of New York. Judge Livingston gave the judgment. After stating what might be a reasonable rule in the case of a claim not seasonably prosecuted, he says, that no rule has been adopted, either in England or this country, which requires a seaman to assert his lien in any given time, or which will justify the court in saying that if he does not proceed by libel on the very first opportunity which is afforded to him, he shall forfeit all right of obtaining satisfaction in that way, unless the vessel shall belong to the same person. He then answers the argument that a lien is lost by parting with the thing, and also the argument from the neglect of the seamen at New Orleans. He says it was nothing more than a forbearance on the part of the libellants to libel at that time, but not a waiver of any remedy they might have if they were not paid, as promised, at New York. The decree, as in the court below, was in favor of the libellants. In [Case No. 10,126] we have the case of The Nestor, decided by Judge Story. The points decided, according to the syllabus, are—First, that the admiralty has jurisdiction in rem for supplies furnished by material-men to foreign ships in our ports, or in the ports of other states; second, that the giving credit, for a fixed time, for the supplies, does not extinguish the lien, nor does the allowing a ship to depart from the port, on her voyage, without payment; third, that the fact of the master or owner being personally liable does not destroy the lien. No question on the first point has been raised in the argument of this case. As to the second—giving credit—the judge says that the objection is founded upon a notion that the liens given by the maritime law are governed exactly by the principles which govern common law liens. He explains this objection with his usual learning and experience in admiralty law; and observes that a maritime lien does not include or require any possession of the thing; it exists altogether independently of such possession. He shows the absurdity of supposing that a lien for materials would be lost by parting with the

ship, as it would be utterly inconsistent with the professed object of all such supplies, to retain the possession. The object is to procure necessary repairs and supplies for the purpose of completing the voyage. But how is the voyage to be completed if the material-man is to hold possession of the vessel, in order to secure his lien for the necessary repairs and supplies? After explaining the nature and policy of this law, the judge says that the claim is indelible; but that it may be lost by gross neglect and delay to enforce it, at least when the rights of other persons have intervened. It requires only reasonable diligence in enforcing the claim at a proper time, and under proper circumstances.

We have here a plain and equitable rule for our guidance in deciding this case. Has the libellant been guilty of gross neglect or delay in enforcing his right? How can this be if there is no proof, or no reason to believe, that he ever had an opportunity known to him, or which the law required him to know at his peril, to prosecute his claim against the vessel? Has he used reasonable diligence to obtain his right at a proper time, and under proper circumstances? Time and circumstances must have a reference, to his power to prosecute his claim; for we cannot say that he has neglected time or circumstances, if neither brought him the means to use his remedy. The case cited by the counsel for the respondent from 4 Cranch [8 U. S.] 328 (Blaine v. The Charles Carter) has nothing in it to impeach or diminish the authority of those referred to on the part of the libellant. The obligee of a bottomry bond allowed the ship to make several voyages, without asserting his claim, having the power to do so, and executions were levied on her by other creditors. It was held that the obligee had lost his preference. When his money became due and was unpaid he could have arrested the vessel, but he voluntarily suffered her to depart. Between the date of the bond and the filing of the libel, the ship made two voyages from England to America, and one from America to England.

In my opinion the facts and circumstances of this case, tested by the authorities referred to, do not show any neglect or delay on the part of the libellant to enforce his right, which should forfeit it; he seems to have used all the diligence in his power, and no evidence has been given of an opportunity to arrest this vessel which he failed to take advantage of. As to the clause in the bill of sale from Mowrey to the respondent, which warrants to secure him against all claims, I would not infer from it, in the face of the denial and proof on the part of the respondent, that he knew of this claim; it will, however, give him a resort to the vendor for indemnity against this claim upon the brig, and he will be aided in the recovery of his indemnity by this decree in this case,

which, if not decisive, will place him on stronger ground than a voluntary payment. Decree for the libellant for the full amount demanded, with costs.

On the 16th September, 1841, an appeal was taken from this decree, to the circuit court of the United States for the third circuit, but, up to the date of this report, has been no further prosecuted. [Case nowhere reported.]